UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 10-CV-3465 (JFB)
_____

MICHAEL J. BARRA,

Plaintiff,

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

Defendant.

_____

**MEMORANDUM AND ORDER**
March 19, 2012
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Michael J. Barra ("plaintiff" or "Barra") commenced this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("SSA"), challenging the final decision of the defendant, Commissioner of the Social Security Administration (hereinafter "Commissioner"), that granted in part and denied in part plaintiff's application for disability insurance benefits. Plaintiff alleged that the final decision was erroneous, not supported by substantial evidence on the record and/or contrary to the law. Plaintiff specifically claimed his disability related to his right shoulder, neck, and upper and lower back. The Commissioner has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff has not opposed defendant's motion. For the reasons that follow, defendant's motion is granted.

I. BACKGROUND

A. Facts

Plaintiff alleges that he became disabled on May 3, 2007, and that this disability continued through the date of the hearing, as a result of neck, back, and shoulder conditions.[1] (Administrative Record ("AR") at 107-08, 118.) Administrative Law Judge Zachary Weiss (the "ALJ" or "ALJ Weiss") construed plaintiff's complaint as asserting an onset date of May 3, 2007 and

_____

[1] The Court notes that, in his complaint, plaintiff alleges that he became disabled on March 13, 2006. However, given the extensive evidence in the record, including plaintiff's own statements, the Court finds that plaintiff's initial injury occurred on or around March 13, 2006, and plaintiff worked until May 3, 2007. Plaintiff cannot seek disability benefits for time periods while he was employed. Thus, the Court utilizes May 3, 2007 as the operative date for the onset of plaintiff's disability.

determined that plaintiff was disabled from May 3, 2007 through June 19, 2008, but was no longer disabled after June 19, 2008 because of an improved medical condition. (*Id*. at 6-21.) The following summary of facts is based upon the administrative record as developed by the ALJ to assess plaintiff's physical state. A more exhaustive recitation of the facts is contained in the Commissioner's submissions to the Court and is not repeated herein.

### 1. Vocational and Other Evidence

Unless otherwise noted, the following facts are drawn from plaintiff's testimony at the hearing before the ALJ.[2] Plaintiff was born on July 1, 1974. (AR at 31.) Plaintiff has difficulty reading, and testified that he was, at one time, a special education student. (*Id*. at 33.) He testified that writing was very difficult for him. (*Id*. at 33.) He also acknowledged he had a driver's license, for which he took a written test without any accommodation. (*Id*. at 37.) Plaintiff has a commercial truck driver's license. (*Id.* at 37.) Plaintiff testified that, at the time, he had two-year old twins, and that his wife was a school teacher. (*Id*. at 35.)

Plaintiff worked in automobile repair for an unspecified period of time, and then performed maintenance work at an apartment complex for about two to three years. (*Id*. at 36.) After that, he worked for approximately ten and one-half years doing maintenance work for an entity called Tri-Boro. (*Id*. at 36, 119.) According to plaintiff's disability report on file with the SSA, this job involved operating vehicles and equipment to maintain roads and highways and plow snow. (*Id*. at 119.) Plaintiff's disability report also states that in this job, he was required to walk and stand,

climb, stoop, crouch, reach and handle large and small objects. (*Id*. at 119.) He was also required to frequently lift twenty pounds, and occasionally lift up to one hundred pounds. (*Id*. at 119.) Plaintiff worked for Tri-Boro until approximately May 3, 2007, and has not worked since then. (*Id*. at 34, 118.)

At the hearing, plaintiff testified regarding his injury. Plaintiff stated that he was initially injured in March 2006, and had surgery in September 2007 to repair a cyst in his shoulder and labral tear. (*Id.* at 31, 32, 39, 41.) Plaintiff testified that, as a result of the operation, he has pins and hooks in his shoulder which limit his ability to move his arm. (*Id.* at 39.) According to plaintiff's disability report, his neck, back and right shoulder injuries hampered his ability to perform prolonged and/or exertional activities, and he ceased work on May 3, 2007. (*Id.* at 118.)

Plaintiff testified to the following continued conditions: tingling and numbness in his fingertips, shoulder pain, neck pain and violent headaches. (*Id.* at 39-41.) Plaintiff testified that he did not drive much because he had difficulty sitting, he drove only two to three times a week, and that when he did drive, he only drove for five to ten minutes. (*Id.* at 38.) When questioned by the ALJ, however, plaintiff acknowledged that he drove himself to the hearing, and that the drive took forty-five minutes. (*Id.*)

Plaintiff testified that family members regularly visited to care for his children while his wife worked. (*Id.* at 49, 59.) Plaintiff testified that he could lift his two children, who then weighed fifteen and twenty pounds, for about twenty minutes at a time. (*Id.* at 58-59.) Plaintiff testified that he could play with his children for about

---

[2] In his brief, the defendant does not dispute these facts.

twenty minutes before needing to sit down. (*Id.* at 48.)

### 2. Medical Evidence

Below is a summary of the medical evidence of plaintiff's well-being in the period immediately prior to the proposed onset date of May 3, 2007 through the date of the ALJ's decision.

### a. Medical Evidence Prior to Onset Date from Dr. Anthony Cappellino

Plaintiff first visited Dr. Anthony Cappellino on April 20, 2006, with complaints of neck, right shoulder, thoracic and lumbar spine pain. (*Id.* at 197-98.) Dr. Cappellino examined plaintiff and found (1) no evidence of tenderness in the cervical spine and only slightly reduced cervical rotation, (2) minor tenderness to palpation of his thoracic spine and full range of thoracic spine motion without evidence of reduced sensation, (3) paraspinal tenderness in the lumbar spine with symmetrical reflexes and negative straight leg raises, and (4) spasm in the paravertebral muscles. (*Id.* at 197-98.) Dr. Cappellino administered an injection into plaintiff's right shoulder. (*Id.*) Dr. Cappellino's assessment/plan stated: "cervical, thoracic, lumbar strain; right shoulder rotator cuff strain." (*Id.* at 200.)

On June 27, 2006, plaintiff returned to Dr. Cappellino and reported ongoing pain as well as reduced neck motion. (*Id.* at 199-200.) Degenerative disc disease and a bulging disc were revealed in an MRI of plaintiff's cervical spine. (*Id.*) Dr. Cappellino's assessment/plan stated: "lumbar strain; cervical strain, degenerative disc disease, C6-7 disc bulge; thoracic strain, right shoulder impingement, possible rotator cuff tear." (*Id.* at 200.) Dr. Cappellino gave plaintiff an injection into

his right shoulder, and prescribed physical therapy. (*Id.*)

On August 8, 2006, plaintiff returned to Dr. Cappellino. An MRI revealed a possible tear of the rotator cuff, and plaintiff's assessment/plan included cervical strain and bulging disc, thoracic and lumbar strain, and right shoulder strain and possible labral tear. (*Id.* at 202.)

On August 31, 2006, plaintiff visited Dr. Cappellino again. (*Id.* at 203.) Dr. Cappellino's diagnosis was similar to his earlier findings. (*Id.* at 203-04.) Dr. Cappellino recommended surgery to address plaintiff's right rotator cuff tear on November 2, 2006. (*Id.* at 205.) Plaintiff was examined by Dr. Cappellino again on January 11, 2007, February 22, 2007, and April 19, 2007. (*Id.* at 214, 217, 219.)

### b. Medical Evidence After Onset Date of May 3, 2007

#### i. Dr. Anthony Cappellino

Plaintiff visited Dr. Cappellino on May 3, 2007. After examination of plaintiff, Dr. Cappellino's assessment/plan stated "cervical strain, disc bulge; thoracic strain; right shoulder rotator cuff strain, labral tear." (*Id.* at 221.) Plaintiff visited Dr. Cappellino several times before he underwent surgery on his shoulder in September 2007. (*Id.* at 222, 224, 225.) On September 13, 2007, Dr. Cappellino performed a right shoulder arthroscopic surgery. (*Id.* at 177-80.) On September 20, 2007, Dr. Cappellino prescribed physical therapy which was to begin two weeks later, on October 3, 2007. (*Id.* at 207-09.)

Plaintiff visited Dr. Cappellino on January 24, 2008, complaining of pain in his neck, lower back and left knee. (*Id.* at 227-28.) On examination, plaintiff's shoulders

revealed no atrophy or deformity. (*Id.* at 227.) Minor paravertebral tenderness with palpation was revealed during Dr. Cappellino's examination of plaintiff's lumbar spine. (*Id.* at 228.) Plaintiff's left knee had joint line tenderness with no palpation, but no neurovascular abnormality was found. (*Id.*) An x-ray of plaintiff's left knee was negative. (*Id.*) Dr. Cappellino prescribed physical therapy, and stated that, if plaintiff's symptoms persisted, he would recommend a cervical MRI to rule out herniated disc. (*Id.*)

On May 15, 2008, Dr. Cappellino reported that plaintiff had "issues in the shoulder" and limited range of motion. (*Id.* at 269.) Plaintiff complained of increasing neck pain and discomfort. (*Id.*) Dr. Cappellino examined plaintiff and found: (1) tenderness and paraspinal muscle spasm in the cervical spine, (2) trace restriction of cervical motion, and (3) reduced right shoulder motion and weakness (strength reported as four out of five), but sensory and motor examinations were normal. (*Id.*) Dr. Cappellino requested authorization to refer plaintiff for pain management consultation to address plaintiff's "neck issues." (*Id.*) Dr. Cappellino noted that plaintiff had "back issues," due to work related injury. (*Id.*)

### ii. Dr. Tasneem Sulaiman

Dr. Tasneem Sulaiman, M.D., an internal medicine consultant, examined plaintiff on May 27, 2008. (*Id.* at 231-34.) Plaintiff complained to Dr. Sulaiman that he had injured his neck, back and right shoulder at work, and had orthopedic surgery on his right shoulder for a labrum tear and cyst. (*Id.* at 231.) Plaintiff complained that he had difficulty moving his right shoulder and lifting more than ten pounds, as well as complained of constant neck pain radiating down to his right shoulder, as well as constant pain in his middle and lower back. (*Id.*)

According to Dr. Sulaiman, plaintiff had no difficulty sitting, standing, or walking and, although plaintiff claimed he could lift no more than ten to fifteen pounds, plaintiff displayed no muscle weakness. (*Id.* at 233.) Dr. Sulaiman noted that plaintiff did not appear to be in acute distress, displayed a normal gait, walked on his heels and toes without difficulty, and was able to squat fully. (*Id.* at 232.) Plaintiff displayed a full range of motion in his cervical spine. (*Id.*) Dr. Sulaiman reported that plaintiff had a reduced range of motion in his right shoulder, but had a full range of motion in his elbows, forearms, wrists and knees. (*Id.* at 233.) Dr. Sulaiman diagnosed right shoulder derangement, lumbar radiculitis, and neck pain without radiculitis. (*Id.* at 233.)

### iii. Dr. Julio Westerband

Dr. Julio Westerband, M.D., FACS, FAAOS, an orthopedic surgeon, evaluated plaintiff and reviewed his medical records on June 19, 2008. (*Id.* at 15, 327-31.) Plaintiff complained of neck, mid-back and right shoulder pain. (*Id.* at 329.) Plaintiff reported that he had been receiving physical therapy three times a week, which helped with the pain. (*Id.* at 327.) Dr. Westerband's report noted that plaintiff walked with a normal gait and was in no acute distress. (*Id.* at 329.) On examination, Dr. Westerband observed a surgical portal in plaintiff's shoulder, and noted no swelling or tenderness on palpation. (*Id.*) Plaintiff's shoulder motion range showed full forward flexion, full extension, full abduction, and full adduction; internal shoulder rotation was 60 degrees out of a possible 80 to 90 degrees, and external rotation was 70 degrees out of a possible 80 to 90 degrees. (*Id.* at 329-30.) Dr. Westerband wrote that

4

plaintiff's injury represented a mild partial disability. (*Id*. at 330.) He also reported that plaintiff's condition had reached maximal medical improvement and that no further treatment was warranted. (*Id*.)

### c. Medical Evidence After June 19, 2008, the Date the ALJ Determined Plaintiff's Disability Ended

#### i. Dr. Anthony Cappellino

On July 24, 2008, plaintiff returned to Dr. Cappellino complaining of pain in his shoulder and a limited range of motion, as well as increased neck pain. (*Id.* at 268.) After examination, Dr. Cappellino reported findings similar to those on May 15, 2008. (*Id.* at 268-69.)

On September 30, 2008, plaintiff visited Dr. Cappellino and complained of increasing discomfort and burning sensation in his shoulder. (*Id*. at 267.) On examination, Dr. Cappellino reported findings similar to those on May 15, 2008 and July 24, 2008, and requested authorization for physical therapy. (*Id*. at 267-69.)

Plaintiff saw Dr. Cappellino again on January 14, 2009, and complained of ongoing shoulder and cervical spine pain. (*Id.* at 265.) Dr. Cappellino reported similar clinical findings to those found on May 15, July 24, and September 20, 2008. (*Id*. at 265-69.) Dr. Cappellino requested authorization for plaintiff to continue physical therapy and for a pain management consultation for his cervical spine symptoms. (*Id*. at 266.) He also requested authorization for a right shoulder MRI to rule out labral re-tearing. (*Id*.)

Plaintiff saw Dr. Cappellino again on March 13, 2009, and complained of "ongoing issues in the cervical spine," as well as pain and a burning sensation in his

shoulder. (*Id*. at 263.) Dr. Cappellino stated that plaintiff was experiencing intermittent episodes of neck pain radiating down his right upper extremity and paresthesia in the right hand, and prescribed a Medrol Dosepak. (*Id*. at 264.)

On July 9, 2009, plaintiff had a right shoulder MRI which revealed a spinoglenoid cyst, but showed that the repair of the rotator cuff tear was intact. (*Id*. at 260.) Dr. Cappellino stated that the imaging further showed some tendinosis and bicipital tendinitis/inflammation. (*Id*. at 260.) Dr. Cappellino's clinical findings remained consistent with those he had previously reported. (*Id*.) Dr. Cappellino stated that plaintiff's symptoms were caused by his neck as his shoulder issues appeared to have been resolved. (*Id*. at 261.)

On August 20, 2009, plaintiff again saw Dr. Cappellino, and the doctor reported that plaintiff's neck symptoms had improved after receiving two injections for pain management. (*Id*. at 258.) Dr. Cappellino noted restricted cervical spine motion and paraspinal tenderness and spasm and plaintiff relayed intermittent episodes of shoulder pain. (*Id*.) Examination of plaintiff's right shoulder revealed trace restriction of internal rotation. (*Id*.) Dr. Cappellino also noted weakness (four out of five) on strength testing, but the balance of the examination revealed normal findings. (*Id*.) Although he noted the presence of mild inflammation and stated that plaintiff's symptoms were caused by his neck, Dr. Cappellino stated that plaintiff's shoulder problems had improved. (*Id*. at 259.)

Dr. Cappellino reported, in a functional assessment dated September 3, 2009, that plaintiff was capable of lifting/carrying less than ten pounds due to bulging cervical disc, cervical disc disease and right shoulder surgery. (*Id*. at 298-99.) He wrote that

plaintiff was capable of standing/walking for less than four hours in an eight-hour workday, and one hour without interruption; these limitations were attributed to plaintiff's cervical spine impairment. (*Id.* at 298.) Plaintiff could sit for less than four hours in an eight-hour workday, and for two hours without interruption. (*Id.* at 298.) Plaintiff could never climb and could only occasionally balance, stoop, crouch, kneel and crawl, and plaintiff's capacity to reach with his right arm was limited. (*Id.* at 299.) Plaintiff's limited capacity to sit was attributed to his cervical spine impairment. (*Id.*)

On January 11, 2010, an MR Arthrogram of plaintiff's right shoulder showed a recurrent tear. (*Id.* at 356-57.)

### ii. Dr. Andrew Rogove

On August 25, 2008, plaintiff visited Dr. Andrew Rogove, M.D., Ph.D, D-PH, a psychiatrist and neurologist plaintiff was referred to by Dr. Cappellino. (*Id.* at 291-93.) Dr. Rogove examined plaintiff, who complained of neck pain and muscle spasms since 2006. (*Id.* at 291.) Plaintiff stated that his pain was localized in his neck and did not radiate into his arms. (*Id.* at 291.) On examination, motor testing revealed five out of five muscle strength in all muscle groups, and sensation was normal to pin prick, fine touch and vibration. (*Id.* at 292.) Plaintiff walked with a normal gait and deep tendon reflexes were two-plus. (*Id.*) Dr. Rogove reviewed plaintiff's May 2006 cervical spine MRI report, and noted that it "just shows degenerative disc disease with muscle spasm. No herniated disc and no cord compression was mentioned on it." (*Id.*) Dr. Rogove stated that, based on his evaluation, plaintiff did not display any evidence of spinal cord compression, and Dr. Rogove recommended pain management and physical therapy. (*Id.*)

### iii. Dr. Sunil Albert

On August 26, 2008, Dr. Sunil Albert, M.D., a pain management specialist, examined plaintiff on referral from Dr. Cappellino. (*Id.* at 16, 288-90.) Plaintiff reported that he experienced neck pain upon waking up in the morning, which went away after taking a hot shower and returned when he laid down at night. (*Id.* at 288.) Plaintiff also complained of daily episodes of occasional tingling in his legs after prolonged sitting and of back pain. (*Id.*) Plaintiff also complained of right shoulder pain; when the doctor asked plaintiff to describe the pain, he stated that the pain started in his neck and radiated to his shoulder. (*Id.*) Dr. Albert noted that plaintiff sat comfortably and stood up from a seated position without difficulty, was in no appreciable distress and moved "briskly" onto the examination table. (*Id.* at 289.) Plaintiff's sensation was intact to light touch and pain in both his upper and lower extremities, but he displayed five out of five motor strength in his upper and lower extremities. (*Id.*) Plaintiff's back displayed normal range of cervical spine motion. (*Id.*)

Dr. Albert revealed, upon palpation of plaintiff's neck, an area of soft tissue swelling which was consistent with plaintiff's complaint. (*Id.*) Dr. Albert reported that examination of plaintiff's shoulder produced restricted external rotation, but wrote that the range of plaintiff's shoulder motion was otherwise normal. (*Id.*) Dr. Albert also noted that plaintiff's primary complaint was pain in the upper neck on the right side while he was in a recumbent position. (*Id.*) Plaintiff had no other significant cervical pain aside from the soft tissue mass which was noted. (*Id.*) Dr. Albert assessed that, during the day, plaintiff was asymptomatic. (*Id.*) He diagnosed plaintiff with shoulder and low back pain, as well as degenerative disc disease in the

cervical spine. (*Id*.) Dr. Albert recommended that, instead of treating the neck pain, the soft tissue mass should be investigated, and prescribed an ultrasound. (*Id*.)

On December 29, 2008, plaintiff had a follow-up with Dr. Albert, who reported that plaintiff was still complaining of neck pain which plaintiff said radiated to his shoulder. (*Id*. at 286-87.) Plaintiff had normal range of cervical motion; and while palpation of plaintiff's paraspinal cervical muscles produced tenderness, the soft tissue swelling was no longer present. (*Id*.) Plaintiff complained of pain while he performed range of shoulder motion. (*Id*.) Topamax was prescribed for plaintiff's head and neck pain. (*Id*. at 287.)

On January 26, 2009, Dr. Albert conducted another examination of plaintiff. (*Id*. at 284-85.) Plaintiff complained of neck pain which he said radiated into his right hand causing numbness and tingling. (*Id*. at 284.) Plaintiff relayed that the Topamax had been moderately effective and also indicated that he took Naprosyn and Tylenol, as needed, with minimal relief. (*Id*.) Dr. Albert's clinical findings were similar to the findings he reported during plaintiff's December 29, 2008 visit. (*Id*. at 284, 287.) Dr. Albert explained that plaintiff might benefit from a series of cervical epidural steroid injections. (*Id*. at 285.) When Dr. Albert saw plaintiff again on February 23, 2009, plaintiff was still complaining of neck pain. (*Id*. at 282-83.) Plaintiff also relayed he was experiencing back pain, but that the neck pain was the worst of his symptoms. (*Id*. at 282.) Dr. Albert's clinical findings were similar to those reported during earlier visits. (*Id*. at 282, 284, 287.)

During plaintiff's April 13, 2009 visit with Dr. Albert, he complained of pain at the base of his skull which radiated to his right

shoulder and right arm. (*Id*. at 280.) Dr. Albert reported mild swelling in the occipital regions, but also a normal range of cervical motion on examination. (*Id*.) Palpation of the cervical paraspinal muscles produced tenderness. (*Id*.) Dr. Albert noted that plaintiff was out of work and had a temporary, partial disability. (*Id*. at 280.) Dr. Albert prescribed Darvocet along with Topomax for the pain. (*Id*. at 281.)

Dr. Albert saw plaintiff again on May 11, 2009, and Dr. Albert reported that plaintiff was still complaining of pain. (*Id*. at 278-79.) Although Dr. Albert noted mild swelling of the occipital regions, the rest of his clinical findings remained the same. (*Id*. at 278.) Dr. Albert again recommended cervical epidural steroid injections. (*Id*. at 279.) An MRI revealed a disc bulge. (*Id*.) On June 11, 2009, Dr. Albert reported similar findings and again stated that plaintiff may benefit from cervical epidural steroid injections. (*Id*. at 276-77.)

Dr. Albert saw plaintiff again on July 23, 2009. (*Id*. at 274-75.) Plaintiff relayed that the cervical steroid injection gave him relief, that his range of motion had improved, and he was able to sleep through the night with less pain. (*Id*. at 274.) Findings were similar to previous findings after physical examination of plaintiff's cervical spine and right upper extremity. (*Id*.) Dr. Albert repeated his opinion that plaintiff had a temporary partial disability. (*Id*.)

Plaintiff saw Dr. Albert again on August 20, 2009, and stated that his pain was less intense and less frequent; plaintiff also reported further improvement after receiving a second injection. (*Id*. at 271-72.) Dr. Albert noted that plaintiff might benefit from another injection. (*Id*. at 272.)

### iv. Dr. Donald Goldman

On December 19, 2009, Dr. Donald Goldman, an orthopedic surgeon, provided an assessment of plaintiff's capacity to perform work related activities.[3] (AR at 16, 332, 344-49.) Dr. Goldman opined that plaintiff could frequently lift up to twenty pounds, and occasionally lift up to fifty pounds. (*Id.* at 344.) Dr. Goldman also wrote that plaintiff could continuously carry up to ten pounds, frequently lift up to twenty pounds, and occasionally lift up to fifty pounds. (*Id.*) Dr. Goldman explained that his assessment was consistent with the findings of Dr. Westerband, who examined plaintiff and found no evidence of impingement, atrophy or weakness. (*Id.*) Dr. Goldman also opined that plaintiff was capable of sitting, standing or walking for eight hours, respectively, in an eight-hour workday. (*Id.* at 345.) Plaintiff could use his hands for continuous reaching, handling, fingering, feeling and pushing/pulling. (*Id.*) Dr. Goldman's views were based on satisfactory range of right shoulder motion, as well as no evidence of atrophy or weakness. (*Id.* at 346.)

### 3. Administrative Proceedings

Plaintiff filed his application for disability benefits on April 10, 2008 claiming disability as of May 3, 2007. (*Id.* at 107-08.) Plaintiff's application was denied on June 5, 2008. (*Id.* at 69-76.) On March 8, 2008, plaintiff requested a hearing before an ALJ. (*Id.* at 140-47.) A hearing was held before ALJ Weiss on September 25, 2008. (*Id.* at 26-64.) On January 29, 2010, the ALJ issued a decision that found that plaintiff was disabled for the period May 3, 2007 through June 19, 2008, but that, after that date, plaintiff was not disabled due to

improved medical condition. (*Id.* at 6-21.) Plaintiff appealed the decision to the Appeals Council (*id.* at 5), which denied plaintiff's appeal on July 9, 2010. (*Id.* at 1-4.)

### B. Procedural History

Plaintiff commenced this action on July 27, 2010, appealing the ALJ's decision that after June 19, 2008, plaintiff was not disabled due to improved medical condition. The Commissioner answered on December 2, 2010, and filed the pending motion for judgment on the pleadings on April 1, 2011. Plaintiff has not responded to the Commissioner's motion. The Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

A district court may only set aside a determination by an ALJ that is "based upon legal error" or "not supported by substantial evidence." *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). The Supreme Court has defined "substantial evidence" in Social Security cases as "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotations and citations omitted)). Furthermore, "it is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, even if there is

---

[3] The Court notes that Dr. Goldman did not examine plaintiff. (AR. at 18.)

substantial evidence for the plaintiff's position. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey*, 145 F.3d at 111; *see also Jones*, 949 F.2d at 59 (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)).

In order to obtain a remand based on additional evidence, a plaintiff must present new evidence that:  "(1) is new and not merely cumulative of what is already in the record[;]" (2) is material, in that it is "relevant to the claimant's condition during the time period for which benefits were denied," probative, and presents a reasonable possibility that the additional evidence would have resulted in a different determination by the Commissioner; and (3) was not presented earlier due to good cause. *Lisa v. Sec'y of the Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).

### III. DISCUSSION

### A. Legal Standard for Disability Determinations

A claimant is entitled to disability benefits under the SSA if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the SSA unless it is "of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations establishing a five-step procedure for evaluating disability claims. *See* 20 C.F.R §§ 404.1520, 416.920. The Second Circuit has summarized this procedure as follows:

> The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work.

*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). The claimant bears the burden of proof with regard to the first four steps; the Commissioner bears the burden of proving the last step. *Brown*, 174 F.3d at 62.

The Commissioner "must consider" the following in determining a claimant's entitlement to benefits: "(1) objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Id.* (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam)).

In the event the claimant is found to be disabled, the Commissioner must also determine if the disability continues through the date of decision. The Commissioner has promulgated regulations establishing an eight-step procedure for evaluating whether the disability continues or ends.

First, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, the Commissioner will find that the disability ended. *Id.* If not, the Commissioner's review proceeds.

Second, the Commissioner determines whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in Appendix 1. 20 C.F.R. § 404.1594(f)(2). If so, the claimant's disability is said to continue. *Id.* If not, the Commissioner's review proceeds.

Third, the Commissioner determines whether there has been medical improvement. 20 C.F.R. § 404.1594(f)(3). If there is no decrease in medical severity, there is no medical improvement. Upon finding medical improvement, measured by a decrease in medical severity, the Commissioner's review continues.

Fourth, the Commissioner determines whether the medical improvement found in step three is related to the claimant's ability to do work in accordance with 20 C.F.R. §§ 404.1594(b)(1)-(4). Medical improvement is related to the ability to work if it results in an increase in the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1594(b)(3). If medical improvement is unrelated to the claimant's ability to work, the Commissioner proceeds to step five. *Id.* If the medical improvement is related to the claimant's ability to work the Commissioner proceeds to step six. *Id.*

Fifth, the Commissioner considers whether the exceptions to medical improvement listed in 20 C.F.R. §§ 404.1594(d) and (e) apply to the claimant's medical improvement. 20 C.F.R. § 404.1594(f)(5). If none apply, the claimant's disability continues. *Id.*

Sixth, if medical improvement is related to the claimant's ability to do work or one of the aforementioned exceptions applies, the Commissioner will determine whether the claimant's impairments are severe. 20 C.F.R. § 404.1594(f)(6). When the evidence shows that all current impairments do not significantly limit the claimant's physical or mental abilities to perform basic work activities, the impairments are not severe and the claimant will no longer be considered disabled. *Id.*

Seventh, if the claimant's impairments are severe, the Commissioner will assess the claimant's residual functional capacity based upon all current impairments and determine whether claimant is able to perform past work. 20 C.F.R. § 404.1594(f)(7). If capable of doing past work, the claimant is no longer disabled. *Id.*

Finally, if the claimant can no longer perform past work, the Commissioner must determine whether the claimant is capable of other work given her residual functional capacity assessment and her age, education, and previous work experience. 20 C.F.R. § 404.1594(f)(8). If the claimant is capable, her disability will have ended. *Id.* If the claimant is incapable, her disability is found to continue. *Id.*

*Wilson v. Astrue*, No. 09-CV-732S, 2010 WL 2854447, at *2-3 (W.D.N.Y. July 19, 2010) (footnotes omitted).

## B. Analysis

### 1. The ALJ's Determination of Plaintiff's Disability

The ALJ concluded that plaintiff was disabled under the SSA from May 3, 2007 through June 19, 2008. (*Id.* at 19.) The Court finds that the ALJ satisfied the five-step inquiry in making this determination. First, the ALJ concluded that plaintiff was not engaged in substantial gainful employment from May 3, 2007 through June 19, 2008. (*Id.* at 14.) For the second step, the ALJ determined that plaintiff suffered from a severe impairment – namely, "degenerative disc disease of the cervical spine, labral tear of the right shoulder, status post

arthroscopic SLAP repair and subacromial decompression" – and that these conditions caused more than just a minimal limitation on plaintiff's ability to work. (*Id.*) For the third step, the ALJ concluded that, from May 3, 2007 through June 19, 2008, claimant did not fall into the categories automatically recognized by federal regulation as qualifying for disability. (*Id.*; *see also* 20 CFR § 404.1520(d)).

For the fourth step, the ALJ concluded that from May 3, 2007 to June 19, 2008, plaintiff had the "residual functional capacity to lift and carry less than ten pounds, stand and walk for four hours and sit for less than four hours in an eight-hour workday." (AR at 17.) The ALJ found that plaintiff was unable to perform past relevant work. (*Id.* at 18.) For the fifth step, the ALJ concluded that "there were no jobs that existed in significant numbers in the national economy that [plaintiff] could have performed." (*Id.* at 18-19; 20 CFR §§ 404.1560(c) and 404.1566.)

The onset date of plaintiff's disability does not appear to be the center of plaintiff's appeal. Though plaintiff's complaint alleges that his disability began on March 13, 2006, substantial evidence in the record demonstrates that plaintiff was gainfully employed until May 3, 2007. (AR at 34, 118.) As such, the ALJ could not have determined that plaintiff was disabled for the purposes of disability benefits prior to May 3, 2007. *See Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) ("To qualify as disabled for purposes of being entitled to disability benefits, an individual must be unable 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .'" (quoting 42 U.S.C. § 423(d)(1)(A) (1994))).

11

## 2. The ALJ's Determination of the End of Plaintiff's Disability

The ALJ concluded that a medical improvement occurred as of June 20, 2008, and that the claimant's disability had ended on that date. (AR at 19; 20 CFR § 404.1594(b)(1).) The ALJ relied on the physical therapy reports, as well as the consultative examiners. (AR at 19.) Though the ALJ did not specifically outline the eight-step process in making his determination, the Court finds that the ALJ addressed each step in the eight-step inquiry.

For the first step, though the ALJ did not explicitly state that plaintiff was not gainfully employed in this portion of his analysis, it is evident that the ALJ relied on his earlier determination that plaintiff did not engage in substantial gainful activity from May 3, 2007 through June 19, 2008. (*Id.* at 14.) Thus, the first step was satisfied.

For the second step, the ALJ determined that the claimant's combination of impairments did not meet or equal the severity of any impairment listed in Appendix 1, paying special attention to the impairments listed in section 1.00 (musculoskeletal). (*Id.* at 19.)

For the third step, the ALJ determined that there had been a medical improvement based upon the reports of the physical therapist and consultative examiners. (*Id.* at 19.)

For the fourth step, the ALJ found that the medical improvement related to plaintiff's ability to work. (*Id.* at 20.) Thus, under the eight-step framework, the inquiry must continue at step six.

For the sixth step, the ALJ found that "[a]t all times relevant to this decision, the claimant has had the following severe impairments: degenerative disc disease of the cervical spine, labral tear of the right shoulder, status post arthroscopic SLAP repair and subacromial decompression." (*Id.* at 14.) Thus, the ALJ determined that claimant's impairments were severe.

For the seventh step, the ALJ assessed the claimant's residual functional capacity and determined that, after considering the evidence, "beginning on June 20, 2008, the claimant has had the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a)." (*Id.* at 19-20.) The ALJ determined that claimant could no longer perform past work. (*Id.* at 20.)

For the eighth step, the ALJ found that, given plaintiff's residual functional capacity assessment and his age, education and work experience, plaintiff was able to perform a significant number of jobs in the national economy. (*Id.* at 20.) Thus, plaintiff's disability ended on June 20, 2008. (*Id.* at 21.)

## 3. Analysis of the ALJ's Conclusion that Plaintiff was Not Disabled as of June 20, 2008

ALJ Weiss determined that plaintiff's disability ended on June 19, 2008 because plaintiff's medical condition improved, and the plaintiff was capable of performing a full range of sedentary work. (*Id.* at 19.) Though ALJ Weiss found that plaintiff could not resume employment as a maintenance worker because that position was too demanding, ALJ Weiss determined that plaintiff was not disabled because he could perform other work that exists in significant numbers in the economy. (*Id.* at 19-20.) For the reasons below, this Court finds that ALJ Weiss' determinations were supported by substantial evidence and based on the correct application of legal standards. In

particular, the Court focuses below on the ALJ's key determinations of plaintiff's medical improvement, plaintiff's capability to perform sedentary work, and plaintiff's capability to perform other work in the national economy.

### a. ALJ's Determination as to Medical Improvement of Plaintiff's Impairments as of June 20, 2008

Pursuant to 20 C.F.R. § 404.1594, a "medical improvement" "is any decrease in the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1594(b)(1). The Court holds that ALJ Weiss' decision, and the record therein, contains substantial evidence to support the finding that plaintiff's disability ended on June 19, 2008, as a result of a decrease in the medical severity of plaintiff's impairments.

### i. Shoulder Improvement

Substantial evidence in the record supported ALJ Weiss' determination that plaintiff experienced medical improvement with respect to his shoulder impairment.

Dr. Westerband examined plaintiff and reviewed his medical records on June 19, 2008, the date that ALJ Weiss found that plaintiff's disability ended. (*Id.* at 329.) Dr. Westerband's report showed that, on examination of plaintiff's left shoulder, there was no tenderness, swelling, or signs of impingement. (*Id.*) Dr. Westerband also found that plaintiff displayed normal range of shoulder motion while performing forward flexion, extension, adduction, and abduction. (*Id.* at 330.) Plaintiff only displayed slightly limited internal and external shoulder rotation. (*Id.*) Dr. Westerband concluded that no further treatment was reasonable or necessary for plaintiff's shoulder. (*Id.*)

In addition, Dr. Sulaiman, who examined plaintiff in May 2008, found that plaintiff had full motor strength even though he had reduced range of motion in his shoulder. (*Id.* at 233.)

Additional examinations of plaintiff's shoulder were consistent with ALJ Weiss' determination that plaintiff had undergone a medical improvement as of June 20, 2008. Dr. Rogove and Dr. Albert both found no evidence of reduced sensation and reported full muscle strength in plaintiff's upper extremities.[4] (*Id.* at 289, 292.) Dr. Albert's examination of plaintiff's shoulder produced restricted external rotation, but the range of shoulder motion was otherwise normal. (*Id.* at 289.) An MRI of plaintiff's right shoulder taken in July of 2009 showed that the repair was intact. (*Id.* at 260.)

Dr. Westerband, Dr. Rogove, and Dr. Albert's results and findings clearly support ALJ Weiss' finding that there was a decrease in the medical severity of plaintiff's shoulder impairment as of June 20, 2008. [5]

### ii. Neck and Back Improvement

Substantial evidence in the record supported ALJ Weiss' determination that plaintiff experienced medical improvement with respect to his neck and back impairments. In August 2008, Dr. Rogove found that plaintiff exhibited no signs of

---

[4] Both doctors examined plaintiff on referral from Dr. Cappellino.

[5] The Court notes that Dr. Cappellino's reports state that, after June 19, 2008, plaintiff had a limited range of shoulder motion as well as shoulder weakness, and these reports were in contrast to the findings and reports of Dr. Westerband and Dr. Sulaiman. (*Id.* at 223, 329-30.) Given the extensive findings of shoulder improvement by other physicians, however, the Court finds that there was substantial evidence in the record to support a finding of medical improvement with respect to plaintiff's shoulder.

"cord compression." (*Id.* at 292.) In addition, in the August 2008 evaluation, Dr. Rogove stated that plaintiff's MRI from May 17, 2006 "just shows degenerative disc disease with muscle spasm. No herniated disc and no cord compression was mentioned on it." (*Id.*)

In August 2008, Dr. Albert reported that plaintiff complained of neck pain on the right side and no neck pain on the left side. (*Id.* at 288.) Plaintiff reported that, during the day, he had "no significant neck pain." (*Id.*) In December 2008, Dr. Albert reported that plaintiff underwent ultrasound studies for neck swelling detected at a prior visit, and those studies did not reveal any abnormality. (*Id.* at 286.) In August 2008, December 2008, and April 2009, Dr. Albert reported that plaintiff had a normal range of cervical spine motion. (*Id.* at 280, 286, 289.) The Court notes that this evidence, in addition to the evidence relating to plaintiff's neck and back issues detailed *supra* Section I.A.2.b., supports the ALJ's decision that plaintiff experienced medical improvement with respect to his neck and back as of June 18, 2008.

### iii. Overall Determination of Medical Improvement

The administrative record contains substantial evidence that support the ALJ's finding that plaintiff's shoulder, neck and back issues were not disabling impairments as of June 19, 2008. Thus, the evidence and administrative record supports the ALJ's conclusion that there was a medical improvement of plaintiff's condition which caused plaintiff to no longer be disabled after June 20, 2008. *See* 20 CFR 404.1594(b)(1).

### b. ALJ's Finding that Plaintiff was Capable of Performing the Full Range of Sedentary Work as of June 20, 2008

As an initial matter, the Court concludes that the ALJ considered all evidence of plaintiff's symptoms, including his right shoulder, neck, and upper and lower back complaints in determining that plaintiff was capable of performing the full range of sedentary work as of June 20, 2008. (AR at 20; *see* 20 C.F.R. § 404.1594(f)(3)(4)(6).) After evaluating plaintiff's credibility, ALJ Weiss determined that, although plaintiff's described impairments could reasonably be expected to produce pain, his statements concerning the persistence and limiting effects of the symptoms were not credible after June 20, 2008 to the extent they were inconsistent with the residual functional capacity assessment. (*Id.* at 19-20.)

### i. Medical Evidence of Plaintiff's Capabilities

In determining that plaintiff was capable of a full range of sedentary work, the ALJ stated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . [and] has also considered opinion evidence." (AR at 19.) The ALJ was not obligated to explicitly reconcile each piece of evidence he considered in his decision as long as it is clear, as is the case here, that he weighed all the evidence of plaintiff's symptoms, both subjective and objective. *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of

disability."). Not only did the ALJ consider all the evidence of plaintiff's symptoms, but the ALJ's conclusion that plaintiff had the residual functional capacity to perform sedentary work is also supported by substantial evidence in the record.

Sedentary work requires the capacity to lift up to ten pounds, sit for approximately six hours a day and stand or walk for approximately two hours a day. 20 C.F.R. § 404.1567(a). The medical evidence and opinion evidence in the record support the ALJ's conclusion that plaintiff had the residual functional capacity to perform this sedentary work from June 20, 2008 going forward.

On several occasions, plaintiff's treating physicians observed him to be in no distress during examinations. *See* 20 C.F.R. §§ 404.1529(a) and (c)(3)-(4) (a claimant's testimony about his subjective complaints must be evaluated against physicians' clinical findings and observations). In May 2008, Dr. Sulaiman observed that plaintiff appeared to be in no acute distress, and that he could walk on his heels and toes without difficulty, walk with a normal gait, complete a full squat and rise from a chair without difficulty. (AR at 232.) Dr. Westerband made a similar observation regarding plaintiff's lack of acute distress and normal gait three weeks later. (*Id*. at 329.) Similarly, when Dr. Albert saw plaintiff in August 2008, he reported that plaintiff displayed a normal gait and moved briskly onto the exam table. (*Id*. at 289.) The Court finds that the ALJ had substantial evidence to support his determination that plaintiff's symptoms did not prevent him from performing sedentary work.

ALJ Weiss gave significant weight to the assessment of Dr. Goldman who reviewed the record and provided an assessment of the plaintiff's capacity to perform work-related

activities which far exceeds the requirements of sedentary work. (AR at 17, 344-45.) Considerable weight was also given to the opinion of Dr. Westerband, who indicated that plaintiff had only a "mild partial disability." (*Id*. at 17, *referencing id*. at 330.)

Dr. Sulaiman's assessment also supported the ALJ's finding that plaintiff could perform the full range of sedentary work.[6] On May 27, 2008, Dr. Sulaiman reported plaintiff had no difficulty sitting, standing, or walking. (*Id*. at 233.) Dr. Sulaiman also reported that plaintiff only stated that he had difficulty lifting more than ten to fifteen pounds, had been in physiotherapy since 2007, and showed no muscle weakness. (*Id*.)

It is evident that ALJ Weiss considered contrary evidence in the record. ALJ Weiss considered Dr. Cappellino's September 2009 assessment, in which he opined that plaintiff was capable of lifting less than ten pounds, sitting less than four hours and standing/walking less than four hours. (*Id*. at 17-18, *referencing id*. at 298.) ALJ Weiss, however, afforded this assessment little weight because it was not consistent with the medical evidence after June 20, 2008. (*Id*. at 17-18; *see also* 20 C.F.R. § 404.1527(d)(4) (stating that the more consistent an opinion is with the record as a whole, the more weight that opinion will be given).) The administrative record does not support Dr. Cappellino's opinion that plaintiff was unable to lift ten pounds,[7] or that plaintiff was limited to

---

[6] ALJ Weiss did not specifically indicate the weight given to the opinion of Dr. Sulaiman, who examined plaintiff three weeks before his disability ended.
[7] Other doctors who examined plaintiff reported that plaintiff had full muscle strength in his upper and lower extremities. (AR at 233, 292, 289.)

15

standing/walking and sitting for less than four hours, respectively.[8]

### ii. Plaintiff's Allegations Were Inconsistent with the Medical Evidence and Plaintiff's Own Statements

The ALJ considered plaintiff's testimony about his continuing pain and difficulty moving, as noted above. The ALJ concluded that this testimony was not credible in light of the objective medical evidence, discussed *supra*, and because of inconsistencies within plaintiff's testimony. (AR at 17.)

As noted *supra*, the ALJ considers all symptoms, including pain in the disability determination, as well as the extent to which a claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 040.1529(a). Additionally, when a claimant's statements about his pain and disability suggest a greater severity of impairment than the objective medical evidence shows by itself, the Commissioner considers relevant factors such as the following: the claimant's daily activities; the nature, location, onset, duration, frequency, and intensity of her pain; factors that precipitate or aggravate claimant's pain or disability; the type, dosage, effectiveness, and side effects of medication; any other treatment; and any other measures the claimant used to relieve pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c); S.S.R. 96-7p.

---

[8] Dr. Cappellino's conclusion is contradicted by the other physicians who uniformly reported that plaintiff had no difficulty standing, walking or sitting. In one instance, Dr. Sulaiman reported that plaintiff displayed a normal gait and station, and was able to squat fully. (AR at 232.) Similarly, Dr. Westerband stated that plaintiff was in no acute distress and walked with a normal gait. (*Id*. at 329.) Dr. Rogove also noted that plaintiff walked with a normal gait. (*Id*. at 292.) Dr. Albert observed that plaintiff sat comfortably. (*Id*. at 289.)

Plaintiff did complain of pain on a daily basis. (AR at 55.) However, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of a disability; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment . . . an which, when considered with all of the evidence . . . would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A); *see also Godwin v. Barnhart*, No. 04 Civ. 2852(DLC), 2005 WL 1683538 at *11 n.8 (S.D.N.Y. July 18, 2005) ("Although [plaintiff] may suffer from pain, substantial evidence from physicians supports the conclusion that this pain does not prevent [plaintiff] from performing sedentary work."). The administrative record lacks substantial corroborating clinical evidence to support plaintiff's allegation that his pain prevented him from performing sedentary work.

Plaintiff's allegations in connection with his limitations were inconsistent with his testimony regarding actual daily activities. For example, plaintiff testified that he could lift only four or five pounds before experiencing a ripping sensation in his biceps. (*Id*. at 57.) During the same discussion, however, plaintiff acknowledged that he had two small children who weighed fifteen and twenty pounds, respectively, and that he could lift these children for twenty minutes. (*Id*. at 58-59.) The ALJ noted this and other inconsistencies in his decision and found that plaintiff's allegations were less credible in light of the inconsistencies. (*Id*. at 17.) *See Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (7th Cir. 1997) (holding that a claimant's testimony may be found less than credible based upon, *inter alia*, inconsistencies either in his testimony or between his testimony and his conduct.).

16

Plaintiff's statements within the record are also inconsistent with respect to his alleged limitations. Although plaintiff told Dr. Rogove that the pain in his neck was localized and did not radiate (*id*. at 291), one day later he told Dr. Albert that the pain radiated into his shoulder and down to his arm. (*Id*. at 288.) Plaintiff claimed to have "continued neck pain with muscle spasm since the day of the accident" (*id.* at 291), but he also told Dr. Albert that the pain would go away when he took a hot shower and after he woke up. (*Id*. at 288-89.) Plaintiff also admitted that he was asymptomatic during the day. (*Id*. at 289.)

In sum, there is substantial evidence to support the ALJ's conclusion that plaintiff had the residual functional capacity to perform sedentary work. The evidence from plaintiff's treating physicians, physical therapy reports, along with plaintiff's own testimony, support the ALJ's conclusion that plaintiff would not be prevented from performing sedentary work. Evidence of plaintiff's daily activities is consistent with the ALJ's conclusion that plaintiff was not disabled.

### c. ALJ's Finding that Plaintiff was Capable of Performing Other Work in the Economy after June 20, 2008

ALJ Weiss considered plaintiff's residual capacity together with his age, education, and work experience, and found that he was capable of performing other work in the economy. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c)(1)-(2), 404.1563, 404.1564, 404.1565, 404.1566; *see also* 42 U.S.C. § 423(d)(2)(A). ALJ Weiss determined that, beginning on June 20, 2008, plaintiff had been able to perform a significant number of jobs in the national economy, and that "based on a residual functional capacity for the full range of sedentary work, considering the claimant's

age, education, and work experience, a finding of 'not disabled'" is directed by Medical-Vocational Rule 201.27." (AR at 20.)

Under Rule 201.27 of the Medical-Vocational Guidelines, contained in 20 C.F.R. Part 404, Subpart P, App. 2, a claimant must be found "not disabled" if the claimant could perform the full range of sedentary work, had at least a high school education and unskilled work experience, and was less than forty-five years of age. As discussed *supra*, the record shows that, after June 20, 2008, plaintiff was capable of performing the full range of sedentary work. Plaintiff possessed a license in auto body repair, as well as a high school diploma, and had been employed in unskilled work. (AR at 32, 36.) Plaintiff was born in 1974.[9] (*Id.* at 31.) Thus, ALJ Weiss properly concluded that plaintiff was less than forty-five years old, possessed a high school diploma, and had unskilled work experience. (*Id.* at 18, 20.) As such, ALJ Weiss properly found that plaintiff could perform other work in the economy, and was no longer disabled after June 20, 2008.

\* \* \*

In sum, based upon a careful review of the administrative record, the Court concludes that the ALJ properly considered all of the evidence and explained in detail the basis for his findings. There is substantial evidence to support the ALJ's conclusion that plaintiff was not disabled as of June 19, 2008. The ALJ considered plaintiff's medical conditions and based his decision that plaintiff no longer had a disability on the fact he could engage in sedentary work after his symptoms alleviated. There is substantial evidence to

---

[9] Thus, plaintiff is a "younger person" as defined in 20 C.F.R. § 404.1563(c).

17

support the ALJ's conclusion that plaintiff had the residual functional capacity to perform sedentary work despite his testimony that he had trouble sitting for extended periods of time and experienced pain. The ALJ also properly found that plaintiff was capable of performing other work in the economy after June 20, 2008. Finally, the ALJ properly weighed and considered plaintiff's testimony about his daily activities in light of objective medical evidence about plaintiff's ability to perform sedentary work and plaintiff's own testimony that he could perform a sedentary job. Accordingly, there was substantial evidence supporting all of the ALJ's findings, which were not erroneous or contrary to law.

III. CONCLUSION

For the reasons stated above, defendant's motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, is granted. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 19, 2012
        Central Islip, New York

* * *

The plaintiff is proceeding *pro se*. The attorney for defendant is Loretta E. Lynch, United States Attorney, by Robert W. Schumacher, II, Eastern District of New York, 610 Federal Plaza, Central Islip, New York, 1172.

18